UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>SCOTT THOMPSON, Individually, and d/b/a ISOSCELES LLC,<br>Defendant. | CIV. 15-5060-JLV<br><br>ORDER |

The United States government initiated this action against defendant Scott Thompson. (Docket 1). The government's complaint advances four causes of action: False Claims Act ("FCA") violations, common law fraud, unjust enrichment and payment by mistake. Id. at pp. 6-8. Defendant, proceeding *pro se*, filed an answer and counterclaims. (Docket 20). The government filed a motion for summary judgment and a motion to dismiss defendant's counterclaims. (Dockets 12 & 23). Defendant filed several other motions, including motions related to amending an earlier brief, reconsideration of a prior motion, discovery matters and staying the case. (Dockets 27, 30, 31, 33 & 41).

**FACTS**

The following recitation consists of the material facts developed from the government's complaint (Docket 1), defendant's answer (Docket 20), the government's statement of undisputed material facts (Docket 14) and defendant's response. (Docket 22).

The National Science Foundation ("NSF") is a United States agency Congress created "to initiate and support basic scientific research and other scientific programs by providing grants, loans[] and other forms of financial assistance to individuals, businesses and academic and nonprofit institutions." (Docket 14 ¶ 1) (citing 42 U.S.C. § 1862). Individuals can "send grant applications to the NSF, which disburses congressionally appropriated funds" to approved projects. Id. ¶ 2. Dating back to 1996, defendant "submitted many requests for grants from the NSF . . . ." Id. ¶ 3.

Defendant met South Dakota State University ("SDSU") Professor Qiquan Qiao and "agreed to take [Dr. Qiao's] project[1] and place it under a limited liability corporation (LLC) . . . named 'Isosceles LLC.' " Id. ¶¶ 4-5. Defendant formed Isosceles LLC, which was a Virginia LLC and "whose registered agent was Kelly Holye, [defendant's] sister," before the corporation dissolved. Id. "On or about June 23, 2009, NSF awarded [defendant's] LLC, Isosceles LLC, $150,000 for the project . . . ." Id. ¶ 9. "The award funds were to be paid to Isosceles LLC in two installments: two-thirds at the beginning of the award performance period upon submission of a request for initial payment, and one-third upon completion of the project and NSF's approval of a final project report." Id.

After the grant was approved, defendant "submitted a request [to the NSF] via the internet for initial payment [of] the money approved for the project . . . ."

[1]The project was named "Full Spectrum Conjugated Polymers for Highly Efficient Polymer Photovoltaics." Id. ¶ 4. The court refers to it as "the project."

Id. ¶ 6. In this initial payment request, defendant claimed to the NSF that Jing Li, an SDSU post-doctorate candidate, was employed as the project's principal investigator. Id. ¶ 7; (Docket 14-1 at p. 2). Defendant claimed Mr. Li's primary employment was with Isosceles LLC, Mr. Li would continue to conduct the research proposed in the initial proposal to the NSF, and Mr. Li was available at that time to perform the proposed work. (Docket 14-1 at p. 2). Relying on defendant's representations, the NSF provided $100,000 of the grant to Isosceles LLC. (Docket 14 ¶ 10). Based on defendant's conduct in handling the grant, he was indicted and a jury convicted him of making false claims in violation of 18 U.S.C. § 287. (Dockets 14 ¶¶ 17-19 & 14-1 at pp. 2-3). Defendant made these claims to the NSF in documents and on that basis the jury convicted him of submitting false documents to an agency of the United States in violation of 18 U.S.C. § 1001. (Dockets 14 ¶¶ 17-19 & 14-1 at pp. 4-5).

Defendant submitted the project's final report to the NSF on or about January 14, 2010. (Dockets 14 ¶ 12 & 14-1 at p. 2). In the final report, defendant claimed Mr. Li was employed as the principal investigator for Isosceles LLC and Mr. Li worked more than 160 hours on the project. (Docket 14-1 at p. 3). Based on these claims in the final report, a jury convicted defendant of making false claims in violation of 18 U.S.C. § 287 and submitting false documents to an agency of the United States in violation of 18 U.S.C. § 1001. (Docket 14 ¶¶ 17-19).

The jury also convicted defendant of two counts of fraud by wire—violations of 18 U.S.C. § 1343—for using the internet when submitting his initial payment request and final report to the NSF. Id.; (Docket 14-1 at pp. 6-7). Defendant's jury trial resulted in an additional conviction for receiving stolen government money, namely the $100,000 in NSF grant money, which violates 18 U.S.C. § 641. (Dockets 14 ¶¶ 17-19 & 14-1 at p. 7).

This court sentenced defendant to five years of probation on each count of conviction, the probationary terms to run concurrently. (Docket 1-1 at p. 2). The court ordered defendant to pay $87,637.89 in restitution—$32,486.86 to SDSU and $55,151.03 to the NSF. Id. at p. 4.

## DISCUSSION

### I. SUMMARY JUDGMENT

The government argues the court should grant summary judgment on its FCA claim pursuant to Federal Rule of Civil Procedure 56(a). (Dockets 12 & 13). Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing

substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

The government bases its first cause of action on the FCA. (Docket 1 at p. 6). The FCA imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . ." 31 U.S.C. § 3729(a)(1). At § 3731(e) the FCA codifies the principle of collateral estoppel:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e). The government brought this case under § 3730(a), which directs the federal government to initiate civil actions for violations of § 3729.

If defendant's conviction establishes the essential elements of a FCA claim, § 3731(e) precludes him from denying those elements. See United States v. Munoz-Escalante, No. 5:14-CV-05085, 2015 WL 6158021, at *1-3 (D.S.D. Oct. 20, 2015). A prima facie case under § 3729(a)(1) requires the government to prove "that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." United States ex rel. Quirk v. Madonna Towers, Inc., 278 F.3d 765, 767 (8th Cir. 2002). "To act 'knowingly' under the [FCA], a person must (1) have actual knowledge of the information, (2) act in deliberate ignorance of the truth or falsity of the information, or (3) act in reckless disregard of the truth

or falsity of the information." Munoz-Escalante, 2015 WL 6158021, at *2 (citing 31 U.S.C. § 3729(b)). "No proof of specific intent to defraud the government is required." Quirk, 278 F.3d at 767 (citing 31 U.S.C. § 3729(b)). "The requisite intent is the knowing presentation of what is known to be false. In short, the claim must be a lie." Munoz-Escalante, 2015 WL 6158021, at *2 (citing Hindo v. Univ. of Health Sci./Chi. Med. Sch., 65 F.3d 608, 613 (7th Cir. 1995) (internal quotation marks omitted)).

Convictions for different offenses can estop a party from denying the elements of a FCA claim.[2] In United States v. Aleff, the United States Court of Appeals for the Eighth Circuit affirmed a district court's determination that a conviction for "submitting false applications for loan-deficiency payments in violation of 18 U.S.C. § 286[]" precluded the defendant from denying the essential elements of the FCA claim the government brought following the conviction. United States v. Aleff, 772 F.3d 508, 510-11 (8th Cir. 2014). In United States v. Karron, a jury convicted Ms. Karron of misapplying federal grant funds in violation of 18 U.S.C. § 666. United States v. Karron, 750 F. Supp. 2d 480, 484-86 (S.D.N.Y. 2011). The court determined Ms. Karron's "prior criminal conviction precludes her from denying the essential elements" of the government's FCA claim. Id. at 488. The defendants in Munoz-Escalante pled guilty to making false statements, violations of 18 U.S.C. § 1001, and the district

[2]See United States v. FastTrain II Corp., No. 12-Civ-21431, 2017 WL 606346, at *5 n.7 (S.D. Fla. Feb. 15, 2017) (collecting cases).

court concluded those convictions estopped the defendants from contesting a FCA claim's essential elements. Munoz-Escalante, 2015 WL 6158021, at *1-3.

In this case, defendant's convictions preclude him from denying the essential elements of the government's FCA claim. Defendant's pertinent convictions are counts two and three, false claims in violation of 18 U.S.C. § 287, and counts five and six, violating 18 U.S.C. § 1001 by submitting false documents. (Docket 14-1 at pp. 1-5); (CR. 11-50054, Dockets 208 at pp. 6-11 & 217 at pp. 1-2).[3] The statute underlying counts two and three provides:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

18 U.S.C. § 287.

In defendant's criminal case, the court instructed the jury on counts two and three as follows:

> Count 2: On or about June 23, 2009, after the grant was approved, Scott Thompson claimed Jing Li was employed as the Principal Investigator, that Jing Li's primary employment was with Isosceles LLC and he would continue to conduct the research proposed in the Initial Proposal to the National Science Foundation and that he was available at that time to perform the proposed work, knowing those claims were false in that

[3]Counts six and seven in the superseding indictment (Docket 14-1 at pp. 1-5) became counts five and six in the jury instructions and verdict form. (CR. 11-50054, Dockets 208 at pp. 6-11 & 217 at pp. 1-2). The court refers to the counts using the numbering on the jury instructions and verdict form.

Jing Li was not an employee of Isosceles LLC, could not continue working on the research and was not available to perform the proposed work.

Count 3: On or about January 14, 2010, in the final report for the period June 2009 to June 2010, Scott Thompson claimed Jing Li was employed as the Principal Investigator for Isosceles LLC for the project titled "Full Spectrum Conjugated Polymers for Highly Efficient Polymer Photovoltaics," and that Jing Li had worked more than 160 hours on the project knowing the claims were false in that Jing Li was not an employee of Isosceles LLC and had not worked 160 hours on the project.

(CR. 11-50054, Docket 208 at p. 6).

As to counts two and three, the jury found defendant guilty of making a false claim. (CR. 11-50054, Docket 217 at p. 1). These convictions establish the essential elements of the FCA claim the government advances now. See Aleff, 772 F.3d at 510-11. Defendant knowingly presented false claims to the government in order to receive funds from the NSF. Based on the false claim criminal statute, 18 U.S.C. § 287, and the jury's conviction of defendant on counts two and three, the court finds defendant is precluded from denying the essential elements of the government's FCA claim. See 31 U.S.C. § 3731(e); see also Aleff, 772 F.3d at 510-11.

Turning to counts five and six, defendant's conviction for submitting false documents to the government, the underlying statute provides:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United
>
> States, knowingly and willfully--

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years . . . .

18 U.S.C. § 1001.

The court's jury instructions on counts five and six included largely similar factual content regarding Jing Li, but the counts have independent requirements relating to the documents defendant submitted—the initial proposal and final report. (CR. 11-50054, Docket 208 at pp. 9-10). Specifically, the counts required that defendant "voluntarily and intentionally made or used a writing or document" which "contained a false, fictitious or fraudulent statement" that defendant knew was false. Id. at p. 10. The jury found defendant guilty of counts five and six. (CR. 11-50054, Docket 217 at p. 2). These convictions embrace the essential elements of the government's FCA claim. See Munoz-Escalante, 2015 WL 6158021, at *1-3 (finding convictions of 18 U.S.C. § 1001 estopped defendants from denying FCA claims). Defendant knowingly submitted documents containing false statements to the NSF to receive funds. Based on defendant's convictions on counts five and six, the court finds defendant is precluded from denying the essential elements of the

government's FCA claim. See 31 U.S.C. § 3731(e); see also Munoz-Escalante, 2015 WL 6158021, at *1-3.

Defendant argues collateral estoppel should not apply in this case. (Docket 21 at pp. 8-11). He asserts collateral estoppel is inapplicable because there is not a final judgment in his criminal case. Id. at p. 9. This is incorrect because a jury convicted defendant, this court sentenced him and defendant did not appeal. (Dockets 14 ¶¶ 17-19 & 1-1); see United States v. Ferro, 321 F.3d 756, 759 (8th Cir. 2003) (stating "final decisions" that are appealable "exist[] only after conviction and sentencing[]").

Relying on Federal Rule of Civil Procedure 60(b), defendant claims summary judgment is not proper because the government committed fraud. (Docket 21 at p. 4). "To prevail on a Rule 60(b)(3) motion, [litigants] must show, 'with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.' " Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (quoting Atkinson v. Prudential Property Co., 43 F.3d 367, 372-73 (8th Cir. 1994)). "A finding of fraud on the court is justified only by the most egregious misconduct *directed to the court itself*, such as bribery of a judge or jury or fabrication of evidence by counsel. . . ." Greiner v. City of Champlin, 152 F.3d 787, 789 (8th Cir. 1998) (emphasis added) (internal quotation marks and citations omitted). Whether or not Rule 60 is relevant to this discussion, defendant has not made the showing of fraud the case law requires.

Defendant argues summary judgment is not warranted because the government has "unclean hands." (Docket 21 at pp. 4-5). "Before [a court] can apply an equitable doctrine, [it] must determine 'whether he who seeks equity has done equity.' " Smith v. World Ins. Co., 38 F.3d 1456, 1462 (8th Cir. 1994) (quoting Prow v. Medtronic, Inc., 770 F.2d 117, 122 (8th Cir. 1985)). "This is part of the doctrine of unclean hands." Id. (internal quotation marks omitted). "A party seeking equity in the court must do equity, including entering the court with clean hands." Strong v. Atlas Hydraulics, Inc., 855 N.W.2d 133, 139 (S.D. 2014) (internal quotation marks omitted). Defendant fails to demonstrate how the government's conduct gives it unclean hands.

Because defendant is precluded from denying the essential elements of the government's FCA claim, and defendant does not present a contrary argument, there are no genuine disputes of material fact. See Aleff, 772 F.3d at 510-11; Munoz-Escalante, 2015 WL 6158021, at *1-3. The court finds summary judgment in favor of the government on its FCA claim is proper.[4]

## II. DAMAGES

The government seeks damages based on its FCA cause of action. (Docket 1 at pp. 8-9). Someone who violates the FCA "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government

[4]The government's summary judgment motion does not mention its remaining causes of action, so the court does not address them.

sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). "[T]he measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." United States v. Coop. Grain & Supply Co., 476 F.2d 47, 62 (8th Cir. 1973) (internal quotation marks omitted); see United States v. Peters, 927 F. Supp. 363, 368 (D. Neb. 1996) (citing Coop. Grain & Supply for this proposition); Munoz-Escalante, 2015 WL 6158021, at *4 (same). "The civil penalty is determined by counting '[e]ach individual false claim or statement . . . .' " Munoz-Escalante, 2015 WL 6158021, at *4 (quoting United States ex rel. Schwedt v. Planning Research Corp., 59 F.3d 196, 199 (D.C. Cir. 1995)).

Under the FCA, defendant is liable for $222,362.11. The government disbursed $100,000 based on claims from defendant a jury found were false. (Dockets 14 ¶ 10 & 1-4). Under 31 U.S.C. § 3729(a), the court must triple that figure to $300,000. See Peters, 927 F. Supp. at 368 ("[S]ection 3729(a) requires the imposition of treble damages."). As to the civil penalties, the court must determine "the number of false claims for which this statutory penalty should be assessed . . . ." Hays v. Hoffman, 325 F.3d 982, 992-93 (8th Cir. 2003). The Hays court noted "the [United States Supreme] Court held 'that the focus in each case [must] be upon the specific conduct of the person from whom the Government seeks to collect the statutory forfeitures . . . .' " Id. (quoting United States v. Bornstein, 423 U.S. 303, 312-13 (1976)). Two specific instances of defendant's conduct—the initial report and final report—relate to the FCA cause

of action, so defendant is liable for two $5,000 civil penalties, totaling in $10,000. See id.

When the court sentenced defendant, it ordered him to pay $87,637.89 in restitution. (Docket 1-1 at p. 4). The court's damage award in this case must take that into account. See United States v. Eghbal, 475 F. Supp. 2d 1008, 1012 (C.D. Cal. 2007) (subtracting restitution from FCA damages); Munoz-Escalante, 2015 WL 6158021, at *4 (same). The proper damage award is $310,000, the treble damage figure plus the civil penalties, "less any amount that [defendant] has paid or will pay to the Government in restitution." Karron, 750 F. Supp. 2d at 493. Consequently, defendant must pay the government $222,362.11—which is $310,000 minus $87,637.89.[5]

## III. MOTION TO DISMISS COUNTERCLAIMS

Defendant's answer to the government's complaint sets forth seven counterclaims. (Docket 20 at pp. 13-20). Four of the counterclaims allege violations of defendant's civil rights under 42 U.S.C. § 1983 or a conspiracy to violate those rights. Id. at pp. 13-18. Defendant grounds two of the other three counterclaims in South Dakota law. Id. at pp. 18-20. One counterclaim is brought under the Federal Tort Claims Act. Id. at pp. 18-19. Each counterclaim relates to defendant's prior criminal jury trial that resulted in his seven convictions, and each is aimed at the prosecutors who tried the criminal

---

[5]Because the government has remaining causes of action, the court will not enter a judgment on damages until the case is completely resolved. See Fed. R. Civ. P. 54(b).

case. Id. at pp. 9-20.[6] The government moves to dismiss the counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure because they fail to state a claim upon which the court can grant relief. (Docket 23).

Absolute immunity shields prosecutors from civil liability "for prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the [government's] case, and other conduct that is intimately associated with the judicial process." Anderson v. Larson, 327 F.3d 762, 768 (8th Cir. 2003). " '[A]ctions connected with initiation of prosecution, even if those actions are patently improper' are immunized." Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting Williams v. Hartje, 827 F.2d 1203, 1208 (8th Cir. 1987)). "However, purely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." Id. (citing Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)). In that case, the prosecutor's immunity is qualified. See Anderson, 327 F.3d at 768. "To determine whether an action is prosecutorial, investigatory or administrative, the court must look to the 'nature of the function

[6]Ordinarily, the causes of action defendant advances in these counterclaims would arise in a case where a complaint names specific people who allegedly violated an individual's rights. Because the government filed this lawsuit against defendant, his counterclaims simply refer to a "plaintiff," but their content is clear: he seeks to hold the prosecutors from his criminal case liable. The prosecutors in the case were both Assistant United States Attorneys. To the extent defendant attempts to hold liable the federal agents who investigated and prosecuted his criminal case, that would function as a suit against the United States, which sovereign immunity blocks. See Walker v. Harmon, Civ. 15-5037, 2016 WL 5376185, at *2-3 (D.S.D. Sept. 26, 2016), aff'd No. 16-3928, 2017 WL 2399464 (8th Cir. June 2, 2017).

performed, not the identity of the actor who performed it.' " Id. (quoting Forrester v. White, 484 U.S. 219, 229 (1987)). "The procedural difference between the absolute and the qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976).

Defendant's statement of his counterclaims makes it clear he seeks to hold the prosecutors from his criminal case liable for their conduct in "the initiation and pursuit of a criminal prosecution, the presentation of the [government's] case, and other conduct that is intimately associated with the judicial process." Anderson, 327 F.3d at 768. In setting out the facts supporting his counterclaims, defendant includes sections titled "Officers of the Court Acting in Bad Faith" and "Willful Perjury and Subornation of Perjury by Officers of the Court," both of which defendant directs at the prosecutors in his criminal case. (Docket 20 at pp. 9-12). Defendant boils down his counterclaims to the following description:

> This counter claim seeks redress against Plaintiff for unlawful and egregious conduct in (1) falsely accusing Scott Thompson of committing fraud when they knew the allegations were completely untrue, (2) manufacturing and using false material evidence to secure an indictment and convictions, (3) suborning and providing perjured testimony to secure an indictment and convictions, (4) causing permanent and irreparable harm to Scott Thompson's mental wellbeing.

Id. at p. 12. Each counterclaim echoes these fundamental allegations aimed at the prosecutors. Id. at pp. 13-20. Defendant's counterclaims target conduct he believes is unlawful, but absolute immunity protects that conduct. See Anderson, 327 F.3d at 768. To the extent that defendant focuses on the prosecutor's interactions with witnesses, that conduct is immunized. Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 580 (8th Cir. 2006) (holding a prosecutor's interviewing of a witness "was prosecutorial and not police work" and was protected by absolute immunity). The court finds defendant's counterclaims fail because the individuals he attempts to hold liable are immune from suit. See Parson v. McCann, 138 F. Supp. 3d 1086, 1105 (D. Neb. 2015) ("[E]ven if the actions are 'patently improper' or made 'in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of [the prosecutor's] jurisdiction[,]' " the actions are absolutely immune from civil liability") (quoting Williams, 827 F.2d at 1208-09); Rayhons v. Brunes, No. 16-CV-3084, 2016 WL 4975205, at *4 (N.D. Iowa Sept. 16, 2016).

Because the prosecutors are immune from liability on defendant's counterclaims, the court finds the counterclaims fail to state a claim upon which the court can grant relief and warrant dismissal under Rule 12(b)(6). See Parson, 138 F. Supp. 3d at 1118 (grounding in Rule 12(b)(6) a dismissal of claims blocked by absolute immunity); Mangiafico v. Blumenthal, 358 F. Supp. 2d 6, 28 (D. Conn. 2005) (same).

## IV. DEFENDANT'S REMAINING MOTIONS

Defendant filed a motion for the court to reconsider its order denying his earlier motion to dismiss the complaint for fraud. (Docket 30). The court stated the high standard defendant must meet to show fraud on the court. See supra at pp. 10-11; (Docket 28 at pp. 1-2). Defendant's motion for reconsideration does not meet that standard, so it is denied.

Although discovery has not fully commenced in this case, defendant filed a motion relating to matters he believes should be included in discovery. (Docket 31). This motion is premature and touches on an issue the parties must attempt to resolve once discovery begins in full.

Defendant filed two motions to stay the case. (Dockets 33 & 41). He claims the court should grant a stay because he has a pending habeas claim related to his criminal case. "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708 (1997); see Kreditverein der Bank Austria v. Nejezchleba, 477 F.3d 942, 948 (8th Cir. 2007) (citing Jones for this proposition). A "district court ha[s] the inherent power to grant [a] stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." Contracting Northwest, Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983); Gen. Mills Mktg. v. Fritsch GmbH, No. 11-2099, 2012 WL 12894829, at *2 (D. Minn. Apr. 17, 2012) (citing Contracting Northwest for this proposition). Defendant has not met his burden of demonstrating the need for a stay. The court finds a stay is not necessary.

**ORDER**

Based on the above analysis, it is

ORDERED that the government's motion for summary judgment on its FCA claim (Docket 12) is granted.

IT IS FURTHER ORDERED that the government's motion to dismiss defendant's counterclaims (Docket 23) is granted. The court dismisses defendant's counterclaims with prejudice.

IT IS FURTHER ORDERED that defendant's motion to file an amended brief (Docket 27) is denied as moot.

IT IS FURTHER ORDERED that defendant's remaining motions (Dockets 30, 31, 33 & 41) are denied.

Dated August 30, 2017.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE